IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

Bradley Nassif,

    Plaintiff,

v.                             Case No.

North Park University,

    Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

The plaintiff, Bradley Nassif ("Plaintiff" or "Dr. Nassif"), by and through undersigned counsel, brings claims against the defendant, North Park University ("Defendant" or "North Park") for breach of contract; discrimination in violation of the Civil Rights Act of 1964, 42 U.S. Code § 2000e-2(a)(1) ("Title VII"); the Illinois Human Rights Act, 775 ILCS 5 §§ 1-102, 2-102; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634; and alleges as follows:

### Parties

1. Plaintiff is sixty-eight years old and an adherent to the Eastern Orthodox Christian faith. Plaintiff was employed at North Park from 2004 until his termination on August 31, 2021.

2. At all times relevant hereto, North Park was a not-for-profit organization properly recognized and sanctioned by the laws of the State of Illinois.

### Jurisdiction and Venue

3. This Court's jurisdiction over the subject matter of this action is invoked pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. §§ 451, 1331, 1343, and 1367.

4. Venue is proper under 28 U.S.C. § 1391(b) because Defendant is located in Illinois and the unlawful employment practices alleged herein took place in the Northern District of Illinois.

5. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 19, 2022 alleging discrimination based on religion and age. At Plaintiff's request, the EEOC issued a Notice of Right to Sue on June 23, 2022.

6. Plaintiff's Charge was cross-filed with the Illinois Department of Human Rights ("IDHR"). Within 30 days of the EEOC's issuance of the Notice of Right to Sue, Plaintiff provided a copy of the EEOC's Notice of Right to Sue to the IDHR via certified U.S. mail.

7. On July 20, 2022 the IDHR issued a notice of dismissal and order of closure.

## Facts Common to All Claims

8. Dr. Nassif worked as a professor of Biblical and Theological Studies in the Christian Studies department ("CSD" or "the Department") at North Park for 17 years. He was promoted to Professor, North Park's highest academic rank, in 2007, and earned tenure in 2010.

9. Dr. Nassif is an internationally-recognized and widely-published scholar with broad expertise, a doctorate and three master's degrees. He was described by the *New Republic* and *the New York Times* as a "leading academic expert on Orthodox-Evangelical dialogue."

10. Throughout his tenure at North Park, Dr. Nassif relied on North Park's Manual of Academic Personnel Policies ("MAPP"), reflected in Exhibit C hereto, which was explicitly incorporated into his 2020 annual appointment letter (Exhibit A) and which set forth many of the terms of his employment contract.

11. MAPP describes North Park as an "intentionally Christian university of the Evangelical Covenant Church" which seeks "to prepare students for lives of significance and service through education in the liberal arts, professional studies, and theology."

12. Although North Park required its faculty to be "committed Christians in faith and action," it adhered to the academic ideal of free expression and expected each faculty member "to seek and to state the truth as he or she sees it." Ex. C ¶¶ 9.1, 10.1. According to MAPP, "Institutions of higher education are conducted for the common good and not to further the interest of either the individual teacher or the institution as a whole. The common good depends upon the free search for truth and its free exposition."

13. MAPP also reserved for faculty the "right to criticize and seek revision." Ex. C ¶ 9.1.4. It added, "Limitations of academic freedom because of religious or other aims of the institution should be clearly stated in writing at the time of appointment." *Id.* ¶ 10.1.

14. Throughout his tenure at North Park, Dr. Nassif fulfilled his obligations to the university, including defense of the "binding resolution" passed by the Evangelical Covenant Church ("ECC") in 2019 that heterosexual marriage is "the Christian standard." There were several discussions about the topic on North Park's campus and Dr. Nassif was identified as taking a traditional position that differed from that of influential members of the faculty and the administration, even though his position represented the "binding resolution" of the ECC.

15. During discussions among the faculty and administration of curriculum which dealt with the topic of homosexuality, certain faculty members sought to censor the ECC position on homosexual marriage. In those discussions, Dr. Nassif advocated for the inclusion in the curriculum of the position of the ECC, as the parent denomination of the university.

16. Dr. Nassif was never informed in writing that he would not be permitted to express the view of the ECC on marriage.

17. Certain members of the faculty and administration responded to Dr. Nassif's perspective with hostility, associating it in a negative way with his age. In one ugly expression of that hostility, a faculty member ranted on social media, "Old white men who've made their life the academy, Fucking exhaust me. . . . Especially those who are past retiring age and have a death grip on their position."

18. Others took more concrete steps to exclude Dr. Nassif and his perspective from the institution. Two of Dr. Nassif's influential colleagues were overheard by a student plotting to force him out, but their plan was scuttled by then-Provost Michael Emerson.

19. After Dr. Emerson left North Park, however, the exclusion effort was renewed, this time under the guise of closing CSD and "reimagining it" in North Park's Seminary, thereby eliminating Dr. Nassif's position.

20. On May 27, 2021, Dr. Nassif received a letter from Provost Craig Johnson terminating his employment. Exhibit B. The letter informed Dr. Nassif that CSD would be discontinued at the conclusion of the 2020-21 academic year and that his appointment as tenured Professor of Biblical and Theological Studies would end on August 31, 2021.

21. North Park grants tenured status to faculty who meet a certain threshold of sustained achievement in teaching, research and service to the University. Ex. C ¶ 5.1. Tenure is "an important means to assure . . . freedom of teaching and research and freedom of activity outside the classroom." Ex. C ¶ 3.1.

22. MAPP permits the termination of a tenured position only under limited circumstances, one of them being "bona fide discontinuance of a program, department or school" and only if a number of procedural protections are followed. Ex. C §§ 7.2, 7.4.

23. North Park failed to adhere to its own standards and procedures and relied on impermissible criteria in its decision to discontinue CSD and terminate Dr. Nassif's position.

24. To begin with, the discontinuation of CSD was not "bona fide," but rather simply a means of terminating the employment of Dr. Nassif, the only tenured faculty of CSD who is on record supporting the ECC's views on marriage. In or about February of 2022, North Park rehired all the tenured faculty in CSD except for Dr. Nassif. All three of Dr. Nassif's tenured former colleagues teach exactly the same courses they taught previously in the College of College of Arts and Sciences.

25. Subsequent to Dr. Nassif's termination the University has also assigned courses Dr. Nassif taught to adjunct faculty.

26. North Park also used impermissible criteria in discontinuing CSD. MAPP only permits the elimination of academic programs based on "educational considerations" such as "educational priorities," "long-term patterns of student enrollment" and "institutional mission." Ex. C § 7.4(a).

27. The administration attempted to justify its decision to discontinue CSD by claiming vaguely that there were low enrollment patterns in CSD. But when the Academic Program Review and Enhancement Committee reviewed financial data commissioned by an outside consultant, it concluded that to the contrary, CSD was a strong, income-generating department.

28. Nor was the discontinuance the result of educational reprioritization. The "reimagining" of CSD in the Seminary has yet to occur, and no specific plans have been announced to the faculty.

29. The administration's decision to eliminate Dr. Nassif's position had nothing to do with the considerations permitted by MAPP § 7.4(a). Rather, the decision stemmed from a) personal hostility towards Dr. Nassif on the part of certain faculty members, b) Dr. Nassif's reasoned opinions about curricular matters and University governance which were protected by MAPP's academic freedom provision, c) Dr. Nassif's religious and "outdated" views, and d) the desire to shame and silence Dr. Nassif.

30. The administration also failed to adhere to MAPP's procedural requirements, which are designed to ensure faculty participation in major academic decisions. MAPP requires the Provost to make the determination of whether educational considerations warrant the elimination of a department in "timely consultation with the Deans Council, the Faculty Senate, and the President." Exhibit C § 7.4. North Park failed to conduct a good-faith, timely consultation with the Deans Council and Faculty Senate prior to its decision to discontinue CSD. Rather, North Park made the decision to discontinue CSD, then merely made a *pro forma* show of consulting the faculty Senate and Dean's Council. It also failed to communicate the faculty's position to the Board of Trustees, which approved the proposed closure of CSD.

31. On March 21, 2022 the American Association of University Professors, which sets standards for academic freedom and faculty terminations, wrote a letter emphasizing the fact that according to professional norms, the faculty is to have primary responsibility over curriculum and faculty status. It elaborated, "What 'primary responsibility' means is that in

all of these matters, the 'governing board and president should . . . concur with the faculty judgment except in rare instances and for compelling reasons which should be stated in detail.'" The AAUP pointed out that the University did not adhere to this standard in discontinuing CSD.

32. North Park also refused to make "every reasonable effort" to find Dr. Nassif a position within North Park before issuing him notice of termination. It did not contact Dr. Nassif, nor his dean or chair, to discuss potential areas of relocation for Dr. Nassif within North Park. Dr. Nassif requested that the University place him in another suitable position, asking for compassion and extended employment since his wife had stage four cancer and he had to be able to support her. The University responded that it did not have a "suitable, vacant position" available for a faculty member with his "areas of training and expertise."

33. Dr. Nassif is qualified to teach courses in religious studies which are being offered and will very likely continue to be offered. He is also qualified to teach history, philosophy, topics in art history and Core 1000 courses in which the University requires all of its undergraduate students to enroll. Dr. Nassif is also the only theological specialist at North Park in the 2000-year-old Eastern Orthodox tradition.

34. North Park substantially deviated from its own standards and procedures in its decision to discontinue CSD and terminate Dr. Nassif position. Additionally, the reasons North Park has given for its decisions are not genuine or supportable.

<u>Legal Claims</u>

Count I
Breach of Contract

35. Each paragraph of this Complaint is incorporated as if fully restated herein.

36. MAPP was among the policies explicitly incorporated into Dr. Nassif's 2020-21 employment contract with North Park. Exhibit A.

37. Also among the University's governing documents are the Faculty Senate Bylaws (Exhibit D) and the North Park Theological Seminary Academic Personnel Policies (Exhibit E, excerpted), both of which create a separation between Seminary governance and governance at the University. The policy governing the Seminary requires that "[t]he Seminary faculty make decisions about curricular matters, academic policy, and matters of student life separate from the wider University faculty . . . ." Exhibit E ¶ 1.4. MAPP also provides no role for the Seminary or the ECC's denominational representative in decisions relating to the termination of tenured faculty. Ex. C ¶ 7.4(a).

38. MAPP (Exhibit C) contains clear promises and mutual obligations. North Park routinely observes the procedures in MAPP and caused its faculty to rely on MAPP as being part of the rules and regulations of the University.

39. North Park breached its employment contract with Dr. Nassif when it terminated his employment in violation of the policies and procedures outlined in MAPP for the termination of a tenured faculty member.

40. North Park breached its employment contract with Dr. Nassif when it failed to respect his right to academic freedom in his speech about homosexual marriage and in discussions about curriculum.

41. North Park violated its duty of good faith and fair dealing by deciding to eliminate Dr. Nassif's position then going through the motions *pro forma* of consulting the Faculty Senate and following the other procedural prerequisites to termination based on false premises.

42. North Park violated the prohibition on Seminary involvement in personnel matters for faculty employed in the University and not the Seminary.

43. At the time of his termination Dr. Nassif had no imminent retirement plans. North Park's decision to discontinue CSD and terminate his employment caused Dr. Nassif loss in salary, benefits, retirement savings and Social Security income.

## Count II
### Unlawful Discrimination Based on Religion in violation of Title VII and the Illinois Human Rights Act

44. Each paragraph of this Complaint is incorporated as if fully restated herein.

45. Dr. Nassif holds historic Christian views regarding marriage and human sexuality, a position that aligns with two thousand years of global Christian conviction.

46. Throughout his tenure at North Park, Dr. Nassif was outspoken about his religious views and participated in several discussions about the topic on North Park's campus. He also advocated for the inclusion of this perspective in North Park's curriculum.

47. Influential faculty members and members of North Park's administration expressed hostility towards Dr. Nassif's views and attempted to shame and silence him for them. Dr. Nassif's religious views on the issue differed from influential members of the faculty and administration.

48. Dr. Nassif's religious views regarding marriage within the Church were a motivating factor in North Park's decision to terminate his employment as tenured professor and decline to rehire him.

49. Similarly situated faculty who held different religious views on the issue or were not as outspoken as Dr. Nassif about their religious views have been rehired to positions in North Park.

50. As a result of his termination, Dr. Nassif suffered and continues to suffer significant emotional distress that led to serious implications for his physical health.

Count III
Age Discrimination in violation of the ADEA and the Illinois Human Rights Act

51. Each paragraph of this Complaint is incorporated as if fully restated herein.

52. Several faculty members associated Dr. Nassif's religious views with his age. Throughout Dr. Nassif's tenure at North Park, several faculty members expressed frustration about the presence of older faculty who espoused what they described as "outdated" views. These remarks were not isolated expressions but reflective of a subculture within North Park. On information and belief, several of those faculty members also advocated for Dr. Nassif's termination.

53. Effective August 31, 2021, North Park terminated Dr. Nassif's tenured appointment.

54. North Park treated similarly-situated, substantially younger instructors more favorably than it did Dr. Nassif. Two substantially younger tenured professors have been reinstated following North Park's decision to discontinue CSD.

55. Defendant's stated reasons for having discontinued Dr. Nassif's position were pretext for age discrimination.

56. Were it not for Dr. Nassif's age, his employment would not have been terminated.

<u>JURY DEMAND</u>

Plaintiff requests a trial by jury with respect to any issues so triable.

WHEREFORE Plaintiff respectfully requests:

- Reinstatement;
- All wages he would have received but for the age discrimination;
- All wages he would have received if North Park had not used his religion as a motivating factor in its decision to terminate his tenure;
- Damages for emotional and physical injuries;
- Lost Social Security income and retirement savings;
- Punitive damages;
- Prejudgment interest;
- Attorneys' fees and costs; and
- Such other relief as law and justice allow.

Dated: August 3, 2022

Respectfully submitted,
<u>/s/ Rima Kapitan</u>

Atty No. 6286541
Kapitan Gomaa Law, P.C.
P.O. Box 6779
Chicago, Illinois 60680
Phone: (312)566-9590
Fax: (312) 566-9591
rima@kapitangomaa.com